UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BARBARA MATTERA, on behalf of
herself and all other similarly situated individuals,

                                        06 Civ. 1878 (DC)

                                        ***Electronically Filed***

                   Plaintiffs,

           -against-

CLEAR CHANNEL COMMUNICATIONS, INC.,
and CLEAR CHANNEL BROADCASTING, INC.,

                   Defendants.
-------------------------------------------------------------X

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND IN THE ALTERNATIVE TO DISMISS PLAINTIFF'S CLASS CLAIM

Bruce E. Menken (BEM 1140)
Kristen Finlon (admitted to practice in New York
state; Southern District admission pending)
BERANBAUM MENKEN BEN-ASHER
& BIERMAN LLP
80 Pine Street
New York, New York 10005
212-509-1616

Oren Giskan (OG 3667)
GISKAN & SOLOTAROFF
207 West 25th Street, 4th Floor
New York, New York 10001
212-847-8315

## TABLE OF CONTENTS

INTRODUCTION AND POSTURE OF CASE.............................................................................1

STATEMENT OF FACTS....................................................................................................2

ARGUMENT....................................................................................................................4

    I.      THE DEFENDANTS' MOTION TO DISMISS FOR FAILURE
          TO JOIN AN INDISPENSABLE PARTY SHOULD BE DENIED.......................4

          A.      Capstar has no interest in the present action, and thus is
                  not a necessary party, because Capstar employed neither
                  Mattera nor the members of the putative class............................................5

          B.      Even if the Court determines that Capstar is a necessary
                  party to the action, joinder is feasible and will not divest this
                  Court of jurisdiction..............................................................................14

          C.      Even if the Court determines that Capstar is a necessary
                  defendant pursuant to Rule 19(a), and that joinder is not
                  feasible, Capstar is not an indispensable party under Rule
                  19(b)......................................................................................................19

    II.     MATTERA MAY PURSUE CLASS CLAIMS FOR VIOLATION
          OF THE NEW YORK LABOR LAW...............................................................21

CONCLUSION................................................................................................................24

## TABLE OF AUTHORITIES

### CASES

### United States Courts of Appeals Cases

*Associated Dry Goods Corp. v. Towers Financial Corp.*,
920 F.2d 1121 (2d Cir. 1990)......................................................................................5

*Evans v. Walter Industries, Inc.*,
449 F.3d 1159, 1164-65 (11th Cir. 2006)..................................................................17

*Frazier v. Pioneer Americas LLC*,
No. 06-30434, __ F.3d __ (5th Cir. July 6, 2006)
(not yet published, available at 2006 U.S. App. LEXIS 16848)..................................17

*Jonesfilm v. Lion Gate Int'l*,
299 F.3d 134 (2d Cir. 2002)..............................................................................13, 19

*R.G. Barry Corp. v. Mushroom Makers, Inc.*,
612 F.2d 651, 655 (2d Cir. 1979)..............................................................................14

### United States District Court Cases

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001).................................................................................22

*Avon Cosmetics v. New Hampton, Inc.*,
1991 U.S. Dist. Lexis 6869 (S.D.N.Y. May 22, 1991).................................................10

*Boise Cascade Corp. v. Wheeler*,
419 F.Supp. 98 (S.D.N.Y. 1976)................................................................................10

*Brzychnalski v. Unesco, Inc.*,
35 F. Supp.2d 351 (S.D.N.Y. 1999) (Chin, J.).............................................................23

*Chesco Co., Inc. v. Nat'l Gypsum Co.*,
649 F.Supp. 65, (E.D.N.Y. 1986)...............................................................................11

*D'Ambrosi v. Bayly, Martin, & Fay, Int'l, Inc.*,
1987 U.S. Dist. LEXIS 1687 (S.D.N.Y. March 9, 1987)..........................................11-12

*Eugenia VI Venture Holdings, Ltd. v. Chabra*,
419 F.Supp.2d 502, 506 (S.D.N.Y. 2005)...............................................................14-15

*Frisone v. Pepsico,*
369 F.Supp.2d 464, 470-71 (S.D.N.Y. 2005)..............................................................................14

*Global Discount Travel Services, LLC v. Trans World Airlines, Inc.,*
960 F.Supp. 701 (S.D.N.Y. 1997)..............................................................................10

*Kearns v. Ford Motor Co.,*
2005 U.S. Dist. LEXIS 41614 (C.D. Cal. November 21, 2005)..............................................17

*Lopez v. Shearson American Express, Inc.,*
684 F.Supp. 1144 (D.P.R. 1988)..............................................................................11, 12

*Mascol v. E& L Transportation, Inc.,*
2005 U.S. Dist. LEXIS 32634, *5-6  (June 30, 2005)..............................................23

*Nowakowski v.Kohlberg,*
1991 U.S. Dist. LEXIS 107 (S.D.N.Y. January 8, 1991)..............................................5, 10

*Polanco v. H.B. Fuller Co.,*
941 F.Supp. 1512 (D. Minn. 1996)..............................................................................10

*Schwartz v. Comcast Corp.,*
2006 U.S. Dist. LEXIS 7499 (E.D. Pa. February 28, 2006)..............................................17

*Torrington Co. v. Yost,*
139 F.R.D. 91 (D.S.C. 1991)..............................................................................10

## State Cases

*Asher v. Abbot Labs,*
737 N.Y.S.2d 4 (1ˢᵗ Dep't 2002)..............................................................................23

*Bynog v. Cipriani Group, Inc.,*
1 N.Y.3d 193 (2003)..............................................................................7

*Cox v. Microsoft Corp.,*
737 N.Y.S.2d 1 (1ˢᵗ Dep't 2002)..............................................................................23

*Parisi v. Loewen Dev. Corp.,*
5 A.D.3d 646, 647 (2d Dep't 2004)..............................................................................7

*Pesantez v. Boyle Envtl. Servs., Inc.,*
673 N.Y.S.2d 659 (1st Dept. 1998)..............................................................................22

*Super Glue Corp. v. Avis Rent A Car System, Inc.,*

517 N.Y.S.2d 764, 767 (2d Dep't 1987)...........................................................................22

## STATUTES AND RULES

28 U.S.C. § 1332(c)(1)...........................................................................................14

28 U.S.C. § 1332(d)...............................................................................15-16, 17, 18

Class Action Fairness Act of 2005 ("CAFA")
Pub. L. No. 109-2, 119 Stat. 5 (2005)......................................1-2, 15-16, 17, 18

Fed. R. Civ. Pro. 12(b)(6).........................................................................................1

Fed. R. Civ. Pro. 12(b)(7).....................................................................................1, 4

Fed. R. Civ. Pro. 19..............................................4, 5, 10, 13, 14, 19, 20, 21

Fed. R. Civ. Proc. 23 ........................................................................................21, 22

N.Y. CPLR § 901(b)........................................................................2, 21, 22

N.Y. LAB. L. § 193 ............................................................................................1, 2

N.Y. LAB. L. § 198.........................................................................5, 21, 22, 24

## LEGISLATIVE HISTORY

S. REP. NO. 109-14 (Feb. 28, 2005)..............................................15-16, 16-17

## OTHER AUTHORITIES

C. Wright & A. Miller, 7 Federal Practice and Procedure § 1604 (1986)................................4-5, 9

## INTRODUCTION AND POSTURE OF CASE

Plaintiff Barbara Mattera ("Mattera" or "Plaintiff") has brought this action individually and as a class action on behalf of all sales representatives employed by Defendants Clear Channel Communications, Inc. ("CCC"), and Clear Channel Broadcasting, Inc. ("CCB"). Defendants have violated New York Labor Law § 193 by deducting earned wages from Plaintiff and other sales representatives without their consent. For the reasons set forth herein, Defendants' motion to dismiss should be denied in its entirety.

Pursuant to Fed. R. Civ. Pro. 12(b)(7), Defendants seek to dismiss the complaint for failure to name an indispensable party.[1] They assert that Capstar Radio Operating Company ("Capstar") is an indispensable party to the action because Capstar, not the Defendants, was Mattera's employer, that the "charge back" policy was a part of Capstar's compensation structure, and that Capstar thus should have been named as a defendant. *See* Defendants' Mem. of Law. Because the Defendants claim that Capstar's principal place of business is New York, they conclude that Capstar's inclusion in the action will destroy diversity and divest this Court of jurisdiction.

However, the Defendants' argument is simply incorrect. A brief review of the facts makes it apparent that the Defendants, not Capstar, employed Mattera and the putative class members and implemented the "charge back" policy. Moreover, even if Capstar were a necessary party, federal jurisdiction is still proper under the Class Action Fairness Act of 2005

---

[1] Defendants purport to seek dismissal under Fed. R. Civ. P. 12(b)(6), in addition to Rule 12(b)(7). However, nowhere in their argument do they present grounds for dismissal under, or even cite to, Rule 12(b)(6), allowing for dismissal of a complaint for failure to state a claim. Accordingly, it is asserted that the Defendants have not met the burden of proof for dismissal under Rule 12(b)(6), and thus that any relief they seek under this rule should be denied.

1

("the CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2004), as it is feasible to include Capstar as a party without divesting the Court of jurisdiction.

Defendants also move to dismiss Plaintiff's class claims under New York Civil Practice Laws and Rules ("CPLR") § 901(b), although they do not indicate under what rule of civil procedure they are moving. Defendants argue that claims under § 193 may involve liquidated damages and therefore would run afoul of § 901(b)'s proscription of class claims that seek penalties in addition to damages.

This motion is premature. The issue of whether plaintiff may assert a claim on behalf of a class of similarly situated persons is an issue for a motion for class certification. Even if it were appropriate to consider the issue at this stage of the proceedings, and the Court were to find that § 901(b) applied to the claim asserted, plaintiff could waive any request for liquidated damages.

## STATEMENT OF FACTS

Defendant CCC is one of the largest media and entertainment companies in the world. *See* Affidavit of Michael J. Puma in Support of Defendants' Motion to Dismiss ("Puma Aff."), Ex. 1 (Complaint) at ¶ 20. CCC owns and operates over 1,200 radio stations in the United States, including 41 in New York. *See id.* at ¶ 16. Defendant CCB is a subsidiary of CCC that controls the radio and television segments of CCC. *See id.* at ¶ 17. Plaintiff Barbara Mattera is employed as a sales representative at one of the New York radio stations owned and operated by Defendants. *See id.* at ¶ 15. As a sales representative, Mattera is required to sell radio advertising spots or air time to advertising agencies, media buying services and large corporate clients. *See id.* at ¶23. The bulk of her salary is from commissions earned on the advertising

2

spots she has sold. *See id.* at ¶ 27.

Once a deal is reached with the client for air time, Mattera and the other sales representatives execute a contract or order and forward it to Defendants' billing office. *See id.* at ¶ 24. Defendants then invoice the client every thirty days after the radio advertising spot is aired until payment is received from the client. *See id.* at ¶ 25. Defendant paid its sales representatives, including Mattera, a modest biweekly draw against commissions earned for their work. Commissions were paid the month following the execution of the contract with the client and the airing of the advertising spot. *See id.* at ¶ 26. The commissions earned by Mattera and the other sales representatives were an essential part of their wages and non-discretionary. *See id.* at ¶ 27. Mattera and the other sales representatives pay state and federal wage type taxes on all money earned as commissions. *See id.* at ¶ 28.

If a client fails to pay for the air time within 120 days of the sale, Defendants deduct the *entire amount* of the commissions from the wages already earned by its sales representatives on prior sales. *See id.* at ¶ 30. At no time did Mattera or the other sales representatives authorize Defendants to deduct their earned and paid commissions if the client failed to pay Defendants or failed to pay within the 120-day period. *See id.* at ¶ 35.

Defendants call these unlawful deductions, made without the authorization of their sales representatives, "charge backs." *See id.* at ¶ 31. By deducting Mattera's and the other sales representatives earned and paid wages to reflect a client's failure to pay for services in a timely manner, Defendants are violating § 193. *See id.* at ¶ 32. Moreover, because most of Defendants' clients are agencies and corporations with whom Defendants have long standing relationships,

Defendants often eventually receive payment on those 120 day aged invoices. *See id.* at ¶ 33.

Defendants retain such payments on aged accounts, but fail to reverse the "charge back".

Defendants thus fail to compensate their sales representatives for their sales. *See id.* at ¶34.

## ARGUMENT

**I.     THE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY SHOULD BE DENIED.**

Pursuant to Rule 12(b)(7), a party may move to dismiss a complaint for failure to join an

indispensable party pursuant to Fed. R. Civ. Pro. 19. *See* Fed. R. Civ. Pro. 12(b)(7). Rule 19, in

turn, provides, in relevant part:

> **(a) Persons to be joined if feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest . . . .

> **(b) Determination by Court whenever Joinder not Feasible.** If a person as described in (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(a)-(b) (boldface in original). In determining whether joinder is necessary, the

court initially must determine whether that person's interest in the litigation is sufficient to

4

satisfy one or more of the tests set forth in Rule 19(a).  *See* C. Wright & A. Miller, 7 Federal

Practice and Procedure § 1604, at 40 (1986).  This determination must be based upon the

"pleadings as they appear at the time of the proposed joinder[.]" *Id., see also Associated Dry*

*Goods Corp. v. Towers Financial Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990).  If the Court

determines that the absent person is a necessary party for purposes of subsection (a), the court

must then determine whether joinder is feasible, and whether, if joinder is not feasible, the person

is an indispensable party without whom the action should not proceed.  *See Nowakowski*

*v.Kohlberg*, 1991 U.S. Dist. LEXIS 107 at *8 (S.D.N.Y. January 8, 1991) (structuring Rule 19

test as a three-part inquiry).

> **A.**  **Capstar has no interest in the present action, and thus is not a necessary party, because Capstar employed neither Mattera nor the members of the putative class.**

The Defendants' sole basis for contending that Capstar is a necessary party is their claim

that Capstar is the employer of Mattera and most of the other members of the putative class.  To

support this contention, the Defendants claim that WWPR and WHTZ were owned by AM/FM

New York, Inc., a company purchased by CCC in 2001, and on some unidentified date was

merged into Capstar, a subsidiary of CCC.[2]  *See* Puma Aff., Ex. 2 (Affidavit of Scott Bick).

---

[2]The statute of limitations for the class claims herein is 6 years, see N.Y. LAB. LAW § 198(3) (McKinney 2002); thus, the putative class includes all sales representatives employed by CCC between March 2000 and March 2006, the date the action was filed.  The Defendants provide no date for when they claim Capstar took responsibility for the operation of the radio stations where Mattera worked.  What is known, however, is that, in March 2005, in response to a charge of age discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), counsel for CCB submitted an affidavit acknowledging that CCB, not Capstar, was Mattera's employer.  *See* Affidavit of Bruce Menken ("Menken Aff.), Ex. 1 (Letter Response to Barbara Mattera's Equal Employment Opportunity Commission Charge).  At best, then, Capstar became the employer of the sales representatives at the New York radio stations, if at all, either

Although the Defendants acknowledge that CCB has had "some responsibility" for "administering the payrolls" of WHTZ and WWPR, despite their earlier attempts to disown responsibility for the stations entirely, they claim that "CCC has neither owned nor operated either WWPR-FM or WHTZ." *Id.* at ¶¶ 6-7. The Defendants attempt to manufacture a basis for their claimed noninvolvement in the operations of WWPR and WHTZ by pointing out that Capstar holds the leases for the facilities where the stations are located, and that Capstar "administers the payroll" for these stations, a phrase which the Defendants characterize as "meaning it is Capstar that pays" the sales representatives and their supervisors. See Puma Aff., Exs. 3 (Affidavit of Josh Hadden) and 4 (Second Affidavit of Scott T. Rick).

The only evidence offered by Defendants in support of their assertions that they were not Mattera's employers are vague and unexamined affidavits from CCC executives.[3] See id. They never explain what, precisely, is meant by the phrase "administers the payroll," nor do they make any effort to explain how, if at all, the responsibility for "administering the payroll" of the radio stations is divided between Capstar and CCB. The Defendants also state that Capstar's tax records for the first quarter of 2006 reflect the payment of wages to the employees of New York

---

in March 2005, after that EEOC response was filed, or on September 15, 2004, the day after Mattera's employment was terminated. By not providing clear and dated information, the Defendants obviously are not disputing that they were the sole employer of Mattera and the putative class for the majority of the class period.

[3]If the Court determines that outright denial of the Defendants' motion is improper, it is respectfully requested that further discovery be ordered. The paucity of information offered by the Defendants places Mattera in the untenable position of arguing, with no base of knowledge, the nature of Capstar's relationship with CCC and CCB. As discussed *infra*, the Defendants have failed to provide even enough information to support their contention that Capstar is a New York corporation, let alone their other characterizations of Capstar.

radio stations.  See Second Rick Aff. at ¶ 3.

However, the Defendants never discuss the nature of Capstar's supposed employment relationship with Mattera.  Under New York law, the "determination of whether an employment relationship exists rests upon whether the alleged employer exercises control over the results produced or over the means used to achieve the results," and "[m]inimal or incidental control over a person's work product without direct supervision or input over the means used to complete the work is insufficient to establish a traditional employment relationship."  *Parisi v. Loewen Dev. Corp.*, 5 A.D.3d 646, 647 (2d Dep't 2004); *see also Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193 (2003).  Significantly, the Defendants neither allege nor show that Capstar had any control over the daily activities of Mattera or any of the other putative class members.  Even accepting the Defendants' representations of Capstar's "involvement" in Mattera's work, it is obvious that Capstar did not employ Mattera.  At most, Capstar held the lease to the radio stations where she worked and, along with CCB, "administered the payroll" of the stations.  This "involvement" does not show that Capstar controlled Mattera's work product or the means by which her work product was achieved.  *See Parisi*, 5 A.D.3d 646.

Notwithstanding the Defendants' failure to meet their burden on their motion, Mattera submits extensive evidence to demonstrate that CCB and/or CCC employed her, directly supervised her, and exercised complete control over her work product.  Mattera's W-2 Tax Forms for the year 2004 list CCB as her employer, along with CCB's business address in San Antonio, Texas.  *See* Menken Aff., Ex. 2 (2004 W-2 Form).  Her 2001 transfer to WHTZ, and her 2002 "Information Change," were both recorded on Clear Channel Personnel Action Forms.

7

*See* Menken Aff., Ex. 3 (Personnel Action Forms).  Memoranda issued to Mattera in 2003 and

2004 concerning her performance were printed on Clear Channel Radio stationery.  *See* Menken

Aff., Ex. 4 (Performance Memoranda).  CCB, not Capstar, is listed as her employer in the

severance agreement that was offered to Mattera at her termination on September 14, 2004.  *See*

Menken Aff., Ex. 5 (Severance Agreement and General Release). Her business cards indicated

that she was a representative of "Clear Channel Radio," and listed her business email address as

BAMattera@clearchannel.com.  *See* Menken Aff., Ex. 6 (Business Card).  In September 2001, a

CCC Employee Handbook was emailed to Mattera and other CCC employees.  *See* Menken Aff.,

Ex. 7 (9/24/01 Email and Employee Handbook).  Obviously, the Defendants, rather than Capstar,

directly controlled Mattera's work.  The identity of the entity which leased the space where

Mattera worked is irrelevant to this determination – the liability at issue here arises out of her

employment, not the physical space where she worked.

Moreover, defendants have *admitted* that CCB employed Mattera.  In 2004, Mattera filed

an EEOC charge of age discrimination against CCB.[4]  Her complaint was investigated internally

by an employee in the human resources department of Clear Channel Worldwide.  *See* Menken

Aff., Ex. 8 (Email dated 9/8/04).  Most significantly, in response to Mattera's EEOC charge,

Martha M. Rose, Corporate Counsel for CCB, submitted a sworn statement in March 2005

acknowledging that CCB had hired Mattera in January 1998, and that Mattera "was employed by

CCB." *See* Menken Aff., Ex. 1 at 1-2.  Thus, CCB, by its own admission, acknowledged that it

was Mattera's employer, even though disavowal of the employment relationship would certainly

---

[4]      An EEOC investigator has been assigned to examine Mattera's age discrimination
allegations.  The matter is pending at this time, and no right to sue letter has yet been issued.

8

have been a more effective defense to the EEOC charge. The present attempts to argue that CCB had no employment relationship, or only a minimal employment relationship, with Mattera are nothing more than a frivolous endeavor to evade this Court's jurisdiction.

The Defendants also overstate their lack of involvement with WWPR and WHTZ. CCB owns the copyrights for the web pages of both radio stations. *See* Menken Aff., Exs. 9 (WWPR Web Page Printout) and 10 (WHTZ Web Page Printout). The "INFO" links on both web pages guide the user to contact information for employment opportunities at the radio stations, and lists as a contact Jeaneane Brennan, who is described as the "EEO Manager for NY Cluster, Clear Channel Radio." *See id.* The Defendants' involvement in the hiring for these radio stations and management of their web pages indicates continuing control and operation of the stations.

Not only is Capstar not Mattera's employer, but the "charge back" policy is the backbone of the *Defendants'* compensation structure, not Capstar's. Significantly, CCC executives themselves have acknowledged responsibility for the "charge back" structure. In an email sent in July 2004, Rich Sibelman, the CCC Controller, sent an email to the Clear Channel Business Office and two CCC executives, reading:

> BM's are calling me a bit too often to ask me what they should do with an A/E who comes in and offers you a copy of a check or a check number for those *amounts on their aging that you are getting ready to charge them back for . . . We need uniformity in this market. If we are not paid on time we charge back.* No more check numbers, copies, stories, excuses, etc. *This is a Corporate Mandate* and we will stick to the rules in order to be fair to everyone. The rules are set in motion and we all need to live by them.

Menken Aff., Ex. 11 (7/12/04 Email) (emphasis added). Obviously, CCC and its management are the masterminds behind the "charge back" policy. By referring to a need for "uniformity in

9

this market" and a "Corporate Mandate," this memorandum also strongly suggests that the

"charge back" structure is in effect in all of the radio stations owned and controlled by CCC, and

that sales representatives throughout the United States, and particularly in New York, are being

wrongfully stripped of their wages. The "charge back" policies played a significant role in

structuring how Mattera and her fellow sales representatives conducted their daily work. Thus,

as the administrator of the "charge back" structure, CCC largely controlled Mattera's work.

The Defendants nevertheless attempt to evade responsibility by invoking a number of

cases in which subsidiaries have been deemed necessary parties under Rule 19, implying that the

joinder of a local subsidiary is a routine requirement.[5] Granted, courts have noted that "where

---

[5]The cases cited by the Defendants do not support joinder in this case. Notably,
*Torrington Co. v. Yost*, 139 F.R.D. 91 (D.S.C. 1991), cited in Defendants' memorandum of law
at 6, does not stand for the proposition for which it was cited by the Defendants. There, the
defendant's former employer brought a trade secrets action against him. Because the injunctive
relief sought would have interfered with his fulfillment of his employment contract with his new
employer, the new employer was deemed a necessary party to the action for Rule 19 purposes.
Obviously, this case has no relevance to the present action. The party deemed indispensable in
*Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701 (S.D.N.Y.
1997), was not a subsidiary but an affiliate, controlled by the same group as one of the parties,
which was a direct party to the contract under dispute, without which relief could not properly be
granted to the parties. The Defendants' other cases are equally unsupportive of joinder in this
case, as they all involve drastically different fact patterns. *See Avon Cosmetics v. New Hampton,
Inc.*, 1991 U.S. Dist. Lexis 6869 (S.D.N.Y. May 22, 1991) (parent corporation which controlled
the terms and negotiations of a purchase agreement among its subsidiaries was a necessary party
to a dispute involving sums owed under the agreement, especially because parent had a right of
action against a party and could thus subject the party to multiple obligations); *Nowakowski,
supra*, 1991 U.S. Dist. LEXIS 107 (patent infringement case dismissed where complaint did not
name as a defendant the subsidiary that the plaintiff accused of infringing the patent); *Boise
Cascade Corp. v. Wheeler*, 419 F.Supp. 98 (S.D.N.Y. 1976) (subsidiary deemed necessary party
to a contract action involving a contract to which the subsidiary had been a party prior to being
acquired by the parent); and *Polanco v. H.B. Fuller Co.*, 941 F.Supp. 1512 (D. Minn. 1996)
(subsidiary was indispensable in a products liability action which alleged that glue manufactured
by subsidiary was unsafe).

the subsidiary is the *primary* participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party." *Lopez v. Shearson American Express, Inc.*, 684 F.Supp. 1144, 1147 (D.P.R. 1988) (emphasis added). However, rather than directing joinder as a matter of course, as the Defendants suggest, courts use a fact-based analysis to determine the rare exception when a subsidiary is an indispensable party to an action involving the parent corporation. *See, e.g., D'Ambrosi v. Bayly, Martin, & Fay, Int'l, Inc.*, 1987 U.S. Dist. LEXIS 1687 (S.D.N.Y. March 9, 1987) (discussed further infra); *Chesco Co., Inc. v. Nat'l Gypsum Co.*, 649 F.Supp. 65, (E.D.N.Y. 1986) (subsidiary was indispensable where it was the sole recipient of the overpayments which were the subject of the action); *Lopez*, 684 F.Supp. at 1148 (proof that subsidiary was the plaintiff's employer, and therefore indispensable, included personnel list, sworn statement by plaintiff, and three letters from plaintiff, all describing plaintiff as an employee of the subsidiary).

The Defendants rely most strongly on this Court's decision in *D'Ambrosini* to argue that Capstar is a necessary party to this action. However, their reliance on this case is misplaced. In *D'Ambrosini*, the New York plaintiff brought action against a parent company, seeking back pay and commissions. *See D'Ambrosini*, 1987 U.S. Dist. LEXIS 1687 at *1. The evidence in support of joinder showed that the plaintiff's employment agreement had been executed between the plaintiff and the parent company's New York subsidiary, with no mention of the parent company. See id. at *2. The commission memorandum upon which the plaintiff's claim for commissions was based was on the letterhead of the New York subsidiary, again with no mention of the parent company. *See id.* The parent company also offered an affidavit explaining

11

that the parent company's logo appeared on the employment agreement and the plaintiff's pay checks because the parent company produced these documents for its subsidiaries.  The parent company offered other employment documents, including the plaintiff's tax forms, employee benefit plans and notices, and a letter from the subsidiary's benefits coordinator, all of which referred to the subsidiary as the plaintiff's employer and did not refer to the parent company.  *See id.* at *3-4.  Understandably, based on this evidence, the Court found that the subsidiary was a necessary party to the action as the plaintiff's "actual and only employer." *Id.* at *6-7.

In contrast, Capstar is neither Mattera's employer nor a "primary participant" in the dispute, as required by *Lopez*.  Against the above-cited evidence that the Defendants employed Mattera, the Defendants offer only their unexamined affidavits and self-serving statements that Capstar leased the facilities where she worked and "administered the payroll" for the stations. They also represent that Capstar's tax records indicate wages paid in 2006, affecting less than a year of the six-year class period.   These statements do not demonstrate that Mattera had an employment relationship, or any relationship at all, with Capstar.  Thus, there is no reason for the Court to believe that Capstar should be a party to this action, let alone that it is a necessary party. Significantly, had Mattera brought this action against Capstar, Capstar likely would have moved to dismiss on the grounds that it was not a proper defendant, as it was not Mattera's employer. Contrary to the Defendants' assertion, this case is not about "piercing the corporate veil" of Capstar to reach its parent company, CCC – it is a simple question of who acted as Mattera's employer.  That entity, and the proper defendant in this case, is CCC and CCB, not Capstar.

Since CCC is the employer at issue and the creator and administrator of the unlawful

12

"charge back" scheme, Mattera and the putative class can obtain complete relief from the Defendants without joining Capstar as a party to the action, as required by Rule 19(a)(1). The Defendants, characterizing the "charge backs" as part of Capstar's compensation structure, assert that complete relief is impossible because Mattera seeks a declaration that the "charge back" structure is unlawful. However, because the structure is CCC's policy, and not Capstar's, there is no reason why relief cannot be granted in Capstar's absence.

Similarly, Capstar's interests do not meet the requirements of Rule 19(a)(2), requiring that the absent party "claim[ ] an interest" in the subject of the action and be situated such that his absence will either impair or impede his ability to protect that interest or create a risk of multiple obligations for the parties to the action. See Fed. R. Civ. Pro. 19(a)(2). As has been discussed, Capstar has no interest to protect in this action, and as such will not be impaired or impeded in any way if the Court proceeds in its absence. *See Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134 (2d Cir. 2002) (noting that, for a party to be considered necessary, "there must be more than an unsupported assertion that [the party] has a claim to that interest").

Defendants argue that Capstar has such an interest because Mattera and her class members, if successful here, can benefit from issue preclusion in a subsequent suit against Capstar. This contention is spurious, because Capstar was not Mattera's employer during the relevant time periods. If anything, a finding by this Court that CCC and/or CCB was Mattera's employer will benefit Capstar, because, having been held not to be Mattera's employer, Capstar will be immune from all future "charge back" claims. For the same reason, the Defendants face no risk of multiple or inconsistent obligations if Capstar is not joined in this action. The

13

Defendants only speculate that Mattera and her class will bring an action against Capstar, which could then implead the Defendants. This speculation is, again, insupportable in light of the wealth of facts demonstrating that Capstar was not Mattera's employer. Because the Defendants cannot show that Capstar is a necessary party, joinder is not required under Rule 19(a).

> **B.      Even if the Court determines that Capstar is a necessary party to the action, joinder is feasible and will not divest this Court of jurisdiction.**

Defendants argue that joinder of Capstar is not feasible because it will destroy this Court's jurisdiction, as Capstar's "princip[al] place of business is New York." Defendants' Mem. of Law at 2. This argument is simply wrong. First, it is not clear that the joinder of Capstar in this action would destroy diversity. For purposes of federal diversity jurisdiction, a corporation is a citizen of the state in which it was incorporated and of the state where it has its "principal place of business." 28 U.S.C. § 1332(c)(1). The Second Circuit has recognized two tests for determining a corporation's principal place of business, the "nerve center" test and the "public impact" or "place of operations" test. *See Frisone v. Pepsico*, 369 F.Supp.2d 464, 470-71 (S.D.N.Y. 2005), *citing R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979); *see also Eugenia VI Venture Holdings, Ltd. v. Chabra*, 419 F.Supp.2d 502, 506 (S.D.N.Y. 2005). Courts choose the appropriate test to apply based on the nature of the corporation. *See id.* at 470. The "nerve center" test is applied where "corporate operations are spread across numerous states," and focuses on the "place where overall corporate policy originates." *R.G. Barry*, 612 F.2d at 655. Where a corporation's activities are more centralized, however, the "place of operations" test is used, and the court focuses on "the location in which the corporation has its most extensive contacts with, or its greatest impact on, the general

14

public." *Eugenia*, 419 F.Supp.2d at 506.  In a case involving a corporation which does not sell a service or product, the nerve center test may be more appropriate.  *See id.*

The Defendants submit no proof to show that Capstar's principal place of business is in New York under either test.  The Defendants even fail to provide enough information about the nature of Capstar's business and structure to determine which test to use.  Capstar's public filings with the New York Department of State indicate that it was incorporated in Delaware, operating in New York as a foreign business corporation, and that its "Principal Executive Office" is in San Antonio, Texas.  *See* Menken Aff., Ex. 12 (Department of State Entity Information).  Additionally, independent research has indicated that the available phone number for Capstar's New York office has been disconnected, and that Capstar is not located at the available address.  *See* Menken Aff., Ex. 13 (Affidavit of Oren Giskan).  Under the "nerve center" test, it appears that Texas would be the principal place of business, assuming that corporate policy is created at the principal executive office.  On the other hand, the New Jersey office may qualify as the "center of operations" for the second test.  At the very least, additional discovery or an evidentiary hearing may be warranted on this issue, should the Court decide that Capstar is a necessary party to the action.

Second, even if the Court determines that Capstar is a New York corporation for diversity purposes, joinder of Capstar will not divest the Court of jurisdiction because of the changes created by the CAFA.  *See* Class Action Fairness Act, S. REP. NO. 109-14, at 4 (2005).  The CAFA modified 28 U.S.C. § 1332 to add a new subsection (d), providing district courts with original jurisdiction over class actions with an amount in controversy is $5,000,000 or more and

minimal diversity, meaning that "any member of a class of plaintiffs is a citizen of a State

different from any defendant." 28 U.S.C. § 1332(d)(2). The CAFA includes a Local

Controversy Exception to the exercise of federal jurisdiction where following conditions are met:

> (I)     greater than two-thirds of the members of all proposed plaintiff classes in the
>         aggregate are citizens of the State in which the action was originally filed;
>
> (II)    at least 1 [one] defendant is a defendant –
>
>> (aa)   from whom significant relief is sought by members of the plaintiff
>>        class;
>> (bb)   whose alleged conduct forms a significant basis for the claims
>>        asserted by the proposed plaintiff class; and
>> (cc)   who is a citizen of the state in which the action was originally filed;
>>        and
>
> (III)   principal injuries resulting from the alleged conduct or any related conduct
>         of each defendant were incurred in the State in which the action was
>         originally filed[.]

28 U.S.C. § 1332(d)(4)(A)(i).

In its report, the Senate Committee on the Judiciary explains that the Local Controversy

Exception was intended to ensure that "class actions with a truly local focus" would not be

removed to federal court, but warned that "this is a narrow exception that was carefully drafted to

ensure that it does not become a jurisdictional loophole." S. REP. NO. 109-14 at 39. Thus, the

exception should only be used for a local controversy, which "uniquely affects a particular

locality to the exclusion of all others." *Id.* The Committee further explained that the provision

required the one local defendant to be a *primary* focus of the plaintiffs' claims, defined as "a

target from whom significant relief is sought by the class (as opposed to just a subset of the class

membership), as well as being a defendant whose alleged conduct forms a significant basis for

the claims asserted by the class." *Id.* at 39-40.  The Committee provided the following example:

> A class action is brought in Florida against an out-of-state automobile manufacturer and a few in-state dealers, alleging that a certain vehicle model is unsafe because of an allegedly defective transmission.  The vehicle model was sold in all fifty states but the class action is only brought on behalf of Floridians.  This case would not fall within the Local Controversy Exception . . . [in part because] *the automobile dealers are not defendants whose alleged conduct forms a significant basis of the claims or from whom significant relief is sought by the class.*  Even if the plaintiffs are truly seeking relief from the dealers, that relief is just small change compared to what they are seeking from the manufacturer.  Moreover the main allegation is that the vehicles were defective.   In product liability cases, the conduct of a retailer such as an automobile dealer does not form a significant basis for the claims of the class members.

*Id.* at 41 (emphasis added).  Thus, the revised § 1332(d) is "intended to expand substantially federal court jurisdiction over class actions," and that its provisions "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court[.]" *Id.* at 43.

Although the Second Circuit has not yet decided the question, at least two circuit courts have held that, where the basic requirements of § 1332(d)(2) have been established by satisfying the amount in controversy and minimum diversity requirements, the burden of proving the applicability of a CAFA exception rests on the party seeking to avail itself of the exception. *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1164-65 (11th Cir. 2006); *accord Frazier v. Pioneer Americas LLC*, No. 06-30434, __ F.3d __ (5th Cir. July 6, 2006) (not yet published, available at 2006 U.S. App. LEXIS 16848); *but see Schwartz v. Comcast Corp.*, 2006 U.S. Dist. LEXIS 7499 (E.D. Pa. February 28, 2006) (holding that the burden of proof remains with the party seeking removal to federal court); *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. November 21, 2005) (same).

Even if the Court places the burden of proof on Mattera (and it should not), it is clear that

the Local Controversy Exception does not apply in this case. Capstar is not a primary focus of

Mattera's class claims. In fact, Capstar has nothing to do with Mattera's class claims because

Capstar is neither the employer of the class nor the author of the "charge back" structure.

Reading the Defendants' conclusory representations in the most generous light possible, Capstar

leased the physical facilities where WHTZ and WWPR were located and "administered the

payroll" (in conjunction with CCC and/or CCB) for those radio stations. However, the

Defendants provide no date for when this alleged "administration of the payroll" began. They do

not offer even an assertion, let alone evidence, that the "administration of the payroll" has

anything to do with the "chargebacks." They do not explain how, if at all, the "administration of

the payroll" is shared between CCB and Capstar.

    In sum, the Defendants offer nothing to show that Capstar had anything to do with the

unlawful "charge back" policies created and required by CCC and CCB. Capstar played no more

of a role in creating those policies than the hypothetical automobile dealer played in the

manufacture of vehicles with faulty transmissions in the Committee's example. Thus, because it

is CCC's conduct that forms the significant basis for the injuries that Mattera and the putative

class suffered, the CAFA Local Controversy Exception does not apply here.

    Because Capstar does not satisfy the second requirement of the Local Controversy

Exception, there is no need to reach the third requirement, with respect to the nature of the

injuries. § 1332(d)(4)(A)(i). However, this requirement also is not met, because it appears that

the "charge backs" at issue in this case were a required policy at every radio station owned and

operated by CCC. *See* Menken Aff., Exs. 11, 14 (List of Radio Stations Owned And Operated

By CCC).  The sales representatives working at radio stations owned, controlled, and operated by the Defendants were "charged back" no matter where they worked in the United States pursuant to CCC's "corporate mandate."  Thus, although Mattera seeks certification of a class of New York plaintiffs, the injury in this case is not limited to New York.  Because the controversy here is not strictly a local one, this case is more properly brought in federal court.  Accordingly, this Court would retain jurisdiction over the case, even if Capstar were joined as a defendant.

      **C.**      **Even if the Court determines that Capstar is a necessary defendant pursuant to Rule 19(a), and that joinder is not feasible, Capstar is not an indispensable party under Rule 19(b).**

"A party cannot be indispensable unless it is a "necessary party" under Rule 19(a)." *Jonesfilm*, 299 F.3d at 139.  Thus, because Capstar is not a necessary party in this case, this Court should not even reach the question of indispensability.  However, even if this Court determines that Capstar is a necessary party, it is nevertheless not an indispensable party for the purposes of Rule 19(b).  The Rule sets forth four factors to be considered in determining whether the absent party is indispensable, namely: (1) "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;" (2) the extent to which the court may, through protective provisions in the judgment or other means, lessen the prejudice; (3) "whether a judgment rendered in the person's absence will be adequate;" and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."  Fed. R. Civ. Pro. 19(b).  The rule does not assign a particular weight to any of these factors, and leaves the matter to the discretion of the Court.  See C. Wright & A. Miller, 7 Federal Practice and Procedure § 1604, at 91-92 (1986); *see also Jonesfilm*, 299 F.3d at 139.

Capstar does not satisfy any of the Rule 19(b) factors. First, the entry of a judgment in Capstar's absence will not prejudice Capstar or the parties to the action. If Mattera prevails and this Court enters a judgment finding CCC's "charge back" policy unlawful, CCC will likely cease imposing this policy upon its subsidiary companies, including Capstar, assuming that Capstar is somehow involved in imposing this policy now. However, Capstar has no interest in the implementation of an unlawful policy that is part of CCC's, not Capstar's, "Corporate Mandate." An order directing CCC to cease the implementation of its unlawful "charge back" policy through its subsidiaries will not prejudice Capstar. Nor will Capstar's presence or absence make a difference to those already parties to the action. The Defendants' defense of the "charge back" policy will not be changed by Capstar's nonjoinder. Further, as discussed *supra*, there is no basis for Mattera or the class to bring a separate action against Capstar which might subject the Defendants to a risk of impleader and multiple obligations. Accordingly, there is no prejudice to the Defendants if Capstar is not joined.

Second, this Court can fashion relief that would alleviate any potential prejudice to the Defendants. To the extent that the Defendants or Capstar have demonstrated some risk because of the chance of Mattera or the class seeking relief in a future action against Capstar, such risk can easily be lessened. As mentioned above, a finding by this Court that Capstar is not the relevant employer will shield Capstar from future liability, and will in turn shield the Defendants from the possibility of impleader by Capstar in a similar action. Because this Court can reduce or remove any risk of prejudice to the parties, the action should not be dismissed on this ground.

As to the third factor, a judgment in Capstar's absence will be adequate to afford relief to

20

the class.  At most, Capstar's involvement in the "charge back" structure is acting in the role of a "mouthpiece" promulgating policies created and required by CCC and CCB.  Thus, a declaration against the Defendants will be sufficient to afford the class relief from these policies.

Finally, no adequate alternative forum exists for Mattera to pursue her claims.  Although it is possible that Mattera can pursue her individual claims in state court, the state court is an improper forum for this class action because its impact extends well beyond the borders of New York.  The CAFA was enacted with a view toward the impropriety of a situation in which a single state-court judge presides over a case with implications for commerce across the country. If Mattera brings her action in state court, the possible result will be just that – a finding by a New York state judge that a policy imposed by a Texas corporation on employees across the country is unlawful.  The clear Congressional expression that such a situation is inappropriate indicates that the most appropriate forum for Mattera to pursue this claim is in federal court.

Because the considerations set forth in Rule 19(b) weigh in favor of this Court's retention of jurisdiction over this matter, Mattera's complaint should not be dismissed even in the unlikely event that Capstar is deemed a necessary party whose joinder in the action is not feasible.

## II.    MATTERA MAY PURSUE CLASS CLAIMS FOR VIOLATION OF THE NEW YORK LABOR LAW

Mattera seeks all available relief under the N.Y. LAB. L. § 198 on behalf of herself individually and on behalf of the class for Defendants' wrongful deduction of the sales representatives' earned wages without consent.  Mattera's class claims have been brought under Fed. R. Civ. Proc. 23(a), (b)(2), and (b)(3).  See Complaint at ¶ 9.  Defendants have moved in the alternative to dismiss Mattera's class claims.  Defendants argue that because § 901(b) does not

21

allow punitive damages class wide, and because § 198 provides for liquidated damages for willful violations, no relief whatsoever is available under the New York Labor Law on a class-wide basis.

As an initial matter, defendants simply assume that § 901(b), New York state's class action rule, is applicable to the instant action. Mattera brought this putative class action pursuant to Fed. R. Civ. Pro. 23, not § 901(b). Even assuming, however, that § 901(b) applies, it hardly requires that plaintiff's class claims be dismissed.

Defendants' argument has been squarely rejected by both the New York federal and state courts. Indeed, New York law plainly allows for the waiver of liquidated damages at the class certification stage by the members of the putative class in actions brought for violations of the New York Labor Law. *See, Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 94-95 (S.D.N.Y. 2001) ("Plaintiffs respond by offering to waive any right to recover liquidated damages (under Labor law §198) as a condition of being certified as a class; any who object may opt out of the class. New York law authorizes such a procedure."); *Pesantez v. Boyle Envtl. Servs., Inc.*, 673 N.Y.S.2d 659 (1st Dep't 1998) ("to the extent certain individuals may wish to pursue punitive claims pursuant to Labor law § 198(1-a), which cannot be maintained in a class action (CPLR 901[b]), they may opt out of the class action. . . ."); *see also, Super Glue Corp. v. Avis Rent A Car System, Inc.*, 517 N.Y.S.2d 764, 767 (2d Dep't 1987) ("Although CPLR 901 (b) bars a class action to recover a penalty or minimum damages imposed by statute, where, as here, the statute does not explicitly authorize a class recovery thereof, the named plaintiff in a class action may waive that relief and bring an action for actual damages only.")

22

As this Court has held, claims under the New York Labor Law for class wide relief are appropriate here, "so long as prospective class members have the right to opt-out of the class action to preserve their claims for liquidated damages." *Brzychnalski v. Unesco, Inc.,* 35 F. Supp.2d 351 (S.D.N.Y. 1999) (Chin, J.) (granting class certification under Rule 23 for claims brought under the New York Minimum Wage Act, with right of putative class members to opt out of the class in order to preserve liquidated damages).[6]  Similarly, in *Mascol v. E& L Transportation, Inc.,* 2005 U.S. Dist. LEXIS 32634, *5-6 (E.D.N.Y. June 30, 2005), the court granted class certification under Rule 23 of claims brought under N.Y. LAB. L. § 663, with an express waiver of any claim to liquidated damages.  The *Mascol* court directed that the notice to putative class members "includ[e] a clear and concise explanation of the nature of any potential liquidated damages claim under the NYS Labor Law § 663, and the implications of the waiver of such damage claim." *Id.,* at *6.

Defendants have simply ignored these cases which plainly provide for the waiver of liquidated damages at the class certification stage for claims brought under the New York Labor Law.  Instead, Defendants rely on two decisions, *Asher v. Abbot Labs,* 737 N.Y.S.2d 4 (1st Dep't 2002) and *Cox v. Microsoft Corp.,* 737 N.Y.S.2d 1 (1st Dep't 2002), which hold that class certification is not appropriate for claims brought under the New York Donnelly Act.  No such claims are asserted here.  Moreover, the Donnelly Act is a strict liability statute which provides

---

[6]     Remarkably, defendants fail to cite Your Honor's decision in *Brzychnalski,* despite the fact that plaintiff brought that decision to defendants' attention at the pre-motion conference. Indeed, knowing full well that Your Honor had already rejected the very argument they assert here, defendants sought to avoid having this Court decide the 901(b) issue by requesting that the Court first decide the jurisdictional issue. *See* Letter of Christopher Parlo, dated May 18, 2006.

treble damages for each and every violation.  In contrast, § 198 provides for liquidated damages only "upon a finding that the employer's failure to pay the wage required by this Article was willful".  N.Y. LAB. LAW § 198(a-1).  Thus, contrary to Defendants' argument, liquidated damages are not mandatory or automatically awarded under the New York Labor Law.

Because liquidated damages may be waived at the class certification stage by the members of the putative class for claims brought under the New York Labor Law, defendants' motion in the alternative to dismiss the class claims must be denied.  Moreover, until the class certification stage, nothing prohibits Mattera from seeking all types of relief available to her individually under the New York Labor Law, as well as seeking all relief which may be available thereunder on a class wide basis.

## CONCLUSION

For the reasons set forth herein, Defendants' Rule 12(b)(7) motion to dismiss the complaint must be denied.  Defendants' motion in the alternative to dismiss Plaintiff's class claims pursuant to § 901(b) also must be denied.

Dated: New York, New York
      August 11, 2006

                                    Respectfully submitted,

                      By:

                                  Bruce E. Menken (BEM 1140)
                                  Kristen Finlon (admitted to practice in New York
                                  state; Southern District admission pending)
                                  BERANBAUM MENKEN BEN-ASHER
                                  & BIERMAN LLP
                                  80 Pine Street
                                  New York, New York 10005
                                  212-509-1616

Oren Giskan (OG 3667)
GISKAN & SOLOTAROFF
207 West 25th Street, 4th Floor
New York, New York 10001
212-847-8315