UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

BARBARA MATTERA,                              :

                Plaintiff,       :          **OPINION**

        - against -                 :          06 Civ. 01878 (DC)

CLEAR CHANNEL COMMUNICATIONS,                 :
INC. and CLEAR CHANNEL
BROADCASTING, INC.,                           :

             Defendants.          :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/14/06

**APPEARANCES:**      BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP
                    Attorneys for Plaintiff
                        By:  Bruce Eric Menken, Esq.
                    80 Pine Street, Second Floor
                    New York, New York  10005

                    MORGAN, LEWIS & BOCKIUS LLP
                    Attorneys for Defendants
                        By:  Christopher Parlo, Esq.
                             Michael Jonathan Puma, Esq.
                    101 Park Avenue
                    New York, New York  10178

**CHIN, D.J.**

          Plaintiff Barbara Mattera brings this proposed class
action against defendants Clear Channel Communications, Inc.
("CCC") and Clear Channel Broadcasting, Inc. ("CCB") (together,
"Defendants"), alleging that Defendants made and continue to make
unauthorized deductions from the wages of sales representatives
for the New York radio stations that Defendants own and operate,
in violation of the New York Labor Law.  Defendants move to
dismiss the complaint for failure to join an indispensable party,

and, alternatively, to dismiss Mattera's class action claim.[1]
For the reasons that follow, the motion is granted.

**BACKGROUND**

**A.   Facts**

For purposes of this motion, the facts in the complaint are assumed to be true and are construed in the light most favorable to plaintiff.

Mattera was employed as a sales representative for New York City radio stations WHTZ ("Z-100") and WWPR ("Power 105") -- two of the more than 1,200 radio stations owned and operated by Defendants.  (Compl. ¶¶ 16, 23).  Sales representatives sell radio advertising spots or air time to advertising agencies, media buying services, and large corporate clients, earning a commission on each sale they make.[2]  (Id. ¶ 24).  These commissions are an essential part of the sales representatives' salaries and are paid one month after the contract for a sale is executed and the advertising spot purchased is aired.  (Id. ¶¶ 27, 28).  The sales representatives are also paid wages on a biweekly basis, in the form of a draw against commissions earned. (Id.).

---

[1]     Defendants also purport to move pursuant to Fed. R. Civ. P. 12(b)(6), but do not specify the grounds for dismissal under that Rule.  (See Def. Mot. 1).

[2]     Defendants refer to sales representatives as "Account Executives."  (Def. Mot. 1).

After a sales representative executes a contract with a client, the contract is forwarded to Defendants' billing office. (<u>Id.</u> ¶ 25).  Defendants then send an invoice to the client 30 days after the purchased advertising spot is aired and every 30 days thereafter until payment is received.  (<u>Id.</u> ¶ 26).  If the client fails to pay within 120 days after being billed, the entire amount of the commission related to that sale is deducted from the next paycheck of the sales representative responsible for the sale.  (<u>Id.</u> ¶¶ 31, 33).  This deduction is known as a "charge back."  (<u>Id.</u> ¶ 31).  At no time did Mattera or the other sales representatives authorize Defendants to make these charge backs.  (<u>Id.</u>).  In most cases, the client, typically an advertising agency or corporation with a longstanding relationship with Defendants, eventually remits the amount due, after more than 120 days have passed.  (<u>Id.</u> ¶ 35).  Upon receiving the late payment, however, Defendants do not reverse the associated charge back.  (<u>Id.</u> ¶ 36).

From January 2002 to September 2004, Mattera was paid a biweekly draw against commissions, in the manner described above. (<u>Id.</u> ¶ 23).  Defendants deducted thousands of dollars in charge backs from Mattera's wages.  (<u>Id.</u> ¶¶ 23, 32).  As a result of Defendants' charge backs, Mattera and the putative class members have suffered substantial financial losses, merely because clients have failed to pay Defendants on a timely basis.  (<u>Id.</u> ¶ 33).

Jurisdiction for this action is based solely on diversity of citizenship.  (Id. ¶¶ 2, 7).  Mattera is a New York citizen residing in Queens.  (Id. ¶ 15).  CCC is incorporated in and has its principal place of business in Texas, and CCB is incorporated in Nevada and has its principal place of business in Texas.  (Id. ¶¶ 4, 5).

B.   **Prior Proceedings**

Mattera commenced this action on March 9, 2006.  She asserts a claim under New York Labor Law § 193 on behalf of herself and "all persons who worked for defendants as sales representatives at one of the New York radio stations and had their wages deducted at any time after March 9, 2000[3] to entry of judgment in this case."  (Id. ¶ 10).  She seeks certification of this case as a class action; a declaratory judgment that Defendants' charge backs violate New York Labor Law; a return of all wages unlawfully deducted from the putative class from March 9, 2000 to the date of entry of judgment in this case; and liquidated damages, reasonable attorneys' fees, and costs.  (Id. at 8).

---

[3]    A six-year limitations period governs Mattera's claim. (Pl.'s Opp. 5 n.2).  See N.Y. Lab. Law. § 198(3) ("Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years.  All employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of such action, whether such action is instituted by the employee or by the commissioner.").

## DISCUSSION

Defendants move to dismiss on the grounds that (1) Mattera has failed to name as a defendant Capstar Radio Operating Company ("Capstar"), the joinder of which would eliminate diversity and divest the Court of subject matter jurisdiction, and (2) in the alternative, Mattera's class action claim is barred by the New York Civil Practice Law and Rules.

**A.   Indispensable Party**

**1.   Applicable Law**

Rule 19 of the Federal Rules of Civil Procedure sets forth a two-part test for determining whether a court must dismiss an action for failure to join an indispensable party. First, the court must determine whether the absent party should be joined if feasible, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a). Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000). Second, if the party is deemed necessary, the court must then determine whether party's absence warrants dismissal pursuant to Rule 19(b). Id. at 725. Rule 19(a) provides that the absent party shall be joined in the suit, if feasible, where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring

> double, multiple, or otherwise inconsistent
> obligations by reason of the claimed
> interest.

Fed. R. Civ. P. 19(a).  "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)."  Viacom, 212 F.3d at 724 (citing Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123 (2d Cir. 1990)).

If, however, the court makes a threshold determination that the party is necessary under Rule 19(a), but the party's joinder is not feasible for jurisdictional or other reasons, the court must determine whether the party is "indispensable." Viacom, 212 F.3d at 725 (internal citations omitted).  This requires the court to assess whether, in equity and good conscience, the action should proceed in the party's absence. Fed R. Civ. P. 19(b); Associated, 920 F.2d at 1124.  Rule 19(b) identifies four factors to guide the court's analysis:

> [F]irst, to what extent a judgment rendered
> in the person's absence might be prejudicial
> to the person or those already parties;
> second, the extent to which, by protective
> provisions in the judgment, by the shaping of
> relief, or other measures, the prejudice can
> be lessened or avoided; third, whether a
> judgment rendered in the person's absence
> will be adequate; fourth, whether the
> plaintiff will have an adequate remedy if the
> action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  The Supreme Court has summarized these four factors as follows: (1) whether the party sought to be joined has an interest in having a forum and whether a satisfactory alternate forum exists; (2) the interest of the

party seeking joinder in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another"; (3) "the interest of the outsider whom it would have been desirable to join"; and (4) "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487, 494 (S.D.N.Y. 2002) (quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109-11 (1968)). If the court ultimately determines that the party is indispensable, then the court must dismiss the action pursuant to Rule 19(b). Viacom, 212 F.3d at 725 (citing ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc., 102 F.3d 677, 681-82 (2d Cir. 1996) (citing Provident, 390 U.S. at 108-25)).

The party moving for dismissal for failure to join an indispensable party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." Holland, 210 F.R.D. at 495 (quoting Citizen Band Potawatomi Indian Tribe v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994)). In deciding the motion, the court may consider matters outside the pleadings. Holland, 210 F.R.D. at 495 (citing cases and other authority).

2. **Analysis**

Defendants contend that Capstar is an indispensable party on the ground that it is at least a joint employer of Mattera and most of the putative class members. Capstar's status

in this case is highly disputed.  By way of background, I note
that following an pretrial initial conference on May 25, 2006,
during which Defendants informed the Court of their intention to
file this motion, I gave Mattera the opportunity to amend her
complaint to join Capstar and/or AMFM, Inc. ("AMFM"), Capstar's
predecessor-in-interest, as defendants.  I advised the parties to
engage in informal discovery addressing whether those entities
were joint employers of Mattera or other putative class members.
Based on letters submitted by the parties, it appears that at
least some discovery was provided, including an affidavit from
Scott T. Bick, Vice President in the Tax Department at CCC,
attesting to Capstar's and AMFM's ownership of the two radio
stations where Mattera worked, and supporting documentation.
(See Menken Letter dated Aug. 24, 2006 to Court; Parlo Letter
dated July 7, 2006 to Court).  Mattera, however, did not amend
her complaint.

In connection with the instant motion, the parties
submitted various affidavits and exhibits concerning Capstar's
status, which the Court has considered.[4]  Defendants claim that

_____

[4]     Among these materials were seven employee affidavits
that Defendants attached to their reply memorandum of law in
further support of the motion to dismiss.  By letter dated August
24, 2006, Mattera, through counsel, argued that the affidavits
were "patently improper," as they constituted "arguments and
evidence raised for the first time" on reply.  (Menken Letter
dated Aug. 24, 2006 to Court at 1).  Mattera urged the Court to
permit her to conduct discovery on these new arguments.  (Id. at
2).  Defendants responded that the affidavits did not present any
new arguments, but were offered "to specifically rebut the
arguments in Plaintiff's opposition brief and to elaborate on
both arguments briefed by both parties."  (Puma Letter dated Aug.
28, 2006 to Court at 1).  Putting aside whether Menken's

it is Capstar, not CCC or CCB, that owns and operates the radio
stations at which Mattera and most of the putative class members
are or were employed, and provide the following chronology
leading to Capstar's ownership of these radio stations.  As of
January 1, 2000, AMFM and its subsidiaries, which are
subsidiaries of CCC, owned and operated five radio stations in
the New York City market (the "New York stations"), including Z-
100 and Power 105, the two stations where Mattera worked.
(6/28/06 Bick Aff. ¶ 2).  In 2000, CCC purchased AMFM, but
retained AMFM's organizational structure, such that Z-100 and
Power 105 continued to be operated by AMFM New York, Inc., a
subsidiary of AMFM.  (Id. ¶ 3).  In 2004, AMFM New York, Inc.
merged into Capstar, another CCC subsidiary. (Id.).  Defendants
assert that neither CCC nor its subsidiary, CCB, has owned or
operated Z-100 or Power 105 since 2000, although CCB had "some
responsibility for administering the stations' payroll" until
2006.  (Id. ¶¶ 6, 7).

Defendants argue that because Capstar is the owner and
operator of the New York stations, it is the employer of all

submission of his August 24 letter was procedurally proper, I
find that even though the affidavits in question address issues
not raised in Defendants' moving papers, they directly respond to
issues raised in Mattera's opposition.  I therefore accept and
consider the affidavits in ruling on this motion.  See Bayway
Refining Co. v. Oxygenated Mktg and Trading A.G., 215 F.3d 219,
226-27 (2d Cir. 2000) ("reply papers may properly address new
material issues raised in the opposition papers so as to avoid
giving unfair advantage to the answering party") (citing Litton
Indus. v. Lehman Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1235
(S.D.N.Y. 1991), rev'd on other grounds, 967 F.2d 742 (2d Cir.
1992)).

current sales representatives for the New York stations, all of whom are putative class members.  (Def. Mot. 5).  The affidavit of Gary W. Ruiz, the Human Resources Data Support Manager for Clear Channel Management Services, L.P., dated August 21, 2006, reads: "[t]he majority of [sales representatives] working for Clear Channel Radio affiliates in New York work for Capstar.  In that regard, 55 of the 137 [sales representatives] presently working in New York State work for the Capstar radio stations." (Ruiz Aff. ¶ 3).  Defendants also submitted two affidavits from Scott T. Bick, the second of which states that it is Capstar that pays the sales representatives for the New York stations. (7/14/06 Bick Aff. ¶ 2).  These salaries are reflected in Capstar's corporate tax filings.  (Id. ¶ 3).  Accordingly, Defendants maintain that it is Capstar's compensation structure -- namely, the charge back policy -- that is at issue here.  They argue that Mattera cannot obtain the injunctive relief she seeks in the absence of Capstar, the entity that actually pays the current sales representatives.

Mattera responds that Capstar employs neither her nor members of the putative class.  She submitted several exhibits showing, among other things, that: CCB is named as her employer both in the severance agreement she was offered upon her termination on September 15, 2004 and on her W-2 tax form for the year 2004; the names "Clear Channel Worldwide" and "Clear Channel Radio" were printed on personnel forms, business cards, office memoranda, and employee handbooks; CCB owns the copyrights for

- 10 -

the Z-100 and Power 105 websites; and both of those websites direct employment inquiries to an individual described as the "EEO Manager for NY Cluster, Clear Channel Radio." (Pl.'s Opp. 8, 10; see Menken Aff. Exs. 2-7, 9, 10). Moreover, Mattera claims that in March 2005, in response to an age discrimination charge that she filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), Defendants admitted that Mattera was employed by CCB. (Pl.'s Opp. 8; see Menken Aff. Ex. 1 at 2).

Mattera further avers that the charge back policy at issue "is the backbone of the Defendants' compensation structure, not Capstar's." (Pl.'s Opp. 9). She points to a July 2004 email sent by Rich Sibelman, who she claims is the CCC Controller, to the "Clear Channel Business Office and two CCC executives," in which CCC executives purportedly acknowledged responsibility for the charge back policy. (Id.). The email reads: "We need uniformity in this market. If we are not paid on time we charge back . . . . This is a Corporate Mandate." (Menken Aff. Ex. 11). This email, Mattera asserts, is proof that "CCC and its management are the masterminds behind the 'charge back' policy" and "strongly suggests that the 'charge back' structure is in effect in all of the radio stations owned and controlled by CCC, and that sales representatives throughout the United States, and particularly in New York, are being wrongfully stripped of their wages." (Pl.'s Opp. 9-10).

Defendants do not contest that CCC and/or CCB may have at one time employed Mattera. But, they argue, it is undisputed

- 11 -

that Capstar is at least a joint employer of all current sales
representatives in New York City -- "who constitute a significant
portion of the putative class" -- and, therefore, it is an
indispensable party.  (Def. Reply Mem. 2).  According to
Defendants, under the four-factor test that the United States
Court of Appeals for the Second Circuit has used to determine
whether an employment relationship exists, Capstar easily
qualifies as a joint employer.  (Id. at 1-2).  Under that test,
an employment relationship exists where the alleged employer: (1)
has the power to hire and fire the employees; (2) supervises and
controls employee work schedules or conditions of employment; (3)
determines the rate and method of payment; and (4) maintains
employment records.[5]  See Zheng v. Liberty Apparel Co. Inc., 355
F.3d 61, 67 (2d Cir. 2003) (citing Carter v. Dutchess Cmty.
Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  Here, the sales
representatives for the New York stations report directly to the
station managers, who work for Capstar and "have the authority
to, and do, hire, fire, and discipline the [sales
representatives] reporting to them."  (Lescano Aff. ¶ 5).
Capstar also pays the sales representatives, funds their health

---

[5]     Defendants interpret these factors in the context of
the relationship between current sales representatives and
Capstar as follows: (1) whether Capstar is involved in their
hiring and firing; (2) whether Capstar disciplines them; (3)
whether Capstar pays them directly, maintains their employment or
pay records, and/or provides insurance for them; and (4) whether
Capstar supervises them (i.e. directs the day-to-day operations
of the employees).  (Def. Reply Mem. 1).

and welfare benefits, and retains their employment files at the New York stations.  (Id. ¶¶ 2-6; Tatum Aff. ¶¶ 2, 3).

Lisa Dollinger, Chief Communications Officer of CCC, explains that the "Clear Channel Worldwide" and "Clear Channel Radio" names that were printed on the business cards, memos, and handbooks identified by Mattera and appear on the Z-100 and Power 105 websites are merely brand names used to refer to CCC affiliates and subsidiaries.[6]  (Dollinger Aff. ¶¶ 2, 3). Furthermore, the copyright statement that appears on the Z-100 and Power 105 websites is a blanket statement that is used for all of the websites of CCC-affiliated radio stations, which are hosted on CCC servers, and "[does] not speak to the specific legal entity that owns and operates the radio station nor the staff employed by that specific legal entity or radio station." (Parsons Aff. ¶ 3).

As for Mattera's claim that CCC and CCB are the "masterminds" of the charge back policy and that the policy is seemingly in effect at all CCC radio stations, Defendants note that Rich Sibelman, the author of the email Mattera refers to, is not the "CCC Controller"; rather, he was a former Regional Market Controller who had no responsibility for any radio stations outside of the New York City area.  (Lescano Aff. ¶ 8). Defendants also submitted the affidavits of Ellen Beck, Assistant Business Manager for WALK FM and AM, two CCC-affiliated radio

---

[6]     Defendants note, however, that the "Clear Channel Worldwide" brand name was discontinued nearly two years ago. (Dollinger Aff. ¶ 3).

- 13 -

stations in Long Island, New York, and Mary O'Sullivan, Market
Controller for all of the CCC-affiliated radio stations in
Rochester, New York, both of which state that no charge back
policy existed at those stations prior to 2005.  (Beck Aff. ¶ 3;
O'Sullivan Aff. ¶ 4).  Both Beck and O'Sullivan indicated that it
was at the discretion of the individual radio stations whether to
implement a charge back policy.  (Beck Aff. ¶ 4; O'Sullivan Aff.
¶ 3).

        While there is clearly a factual dispute as to whether
Capstar was ever Mattera's employer, the evidence submitted by
the parties shows that Capstar employs most of the current sales
representatives for CCC-affiliated radio stations in New York.
Indeed, Mattera does not deny that Capstar may have become the
employer of members of the putative class at some point during
the class period, stating that "at best . . . Capstar became the
employer of the sales representatives at the New York stations,
if at all, either in March 2005, after the EEOC response was
filed, or on September 15, 2004, the day after [her] employment
was terminated."  (Pl.'s Opp. 6 n.2).

        I conclude that Capstar, because it is the employer of
a significant number of current sales representatives, all of
whom are members of the purported class, is a necessary party to
this action under Rule 19(a).  It is difficult to see how Mattera
could be accorded complete relief without Capstar, the entity
that employs and, moreover, pays and makes charge backs to the
wages of, members of the putative class.

Furthermore, Capstar qualifies as an indispensable party under Rule 19(b).  Capstar would undoubtedly be prejudiced if a judgment is rendered in this action in its absence, given that the complaint is directed towards Capstar's own compensation structure and policies.  To allow this action to proceed without Capstar would also result in prejudice to Defendants, who risk double liability or, at a minimum, duplicative litigation with respect to the same charge back policy at issue.  Because of the preclusive impact of a judgment in favor of Mattera, the Court cannot shape its relief to ameliorate this prejudice.  On the other hand, there is no reason to believe that Mattera will be prejudiced if her complaint is dismissed, as she may easily proceed in state court with her claim.

B.    **Subject Matter Jurisdiction**

The only issue remaining, with respect to whether the Court must dismiss the complaint for Mattera's failure to name Capstar as a defendant, is whether it is feasible to join Capstar.  Defendants argue that Capstar's joinder would defeat diversity, the sole basis for the Court's subject matter jurisdiction over this action.  It is undisputed that Mattera is a New York citizen (Compl. ¶ 5), and the Court finds, based on the submissions of the parties, that Capstar is a New York citizen for purposes of diversity jurisdiction.  Subject matter jurisdiction cannot, therefore, be premised on complete diversity.  Mattera maintains that, even in the absence of complete diversity, the Court still has subject matter

- 15 -

jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, § 5, 119 Stat. 4 (2005).  See 28 U.S.C. § 1332(d).

### 1.  **Applicable Law**

Congress enacted CAFA on February 18, 2005 in an effort to curb class action abuses stemming largely from state and local courts "keeping cases of national importance out of Federal court," often demonstrating bias against out-of-state defendants and "making judgments that impose their view of the law on other States and bind the rights of the residents of those States." Pub. L. No. 109-2, § 2(a)(4), 119 Stat 4.  One of CAFA's stated purposes is "to restore the intent of the framers of the [] Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." § 2(b)(2).  Among other things, CAFA amended the federal diversity jurisdiction statute by relaxing the complete diversity rule for covered class actions.  Pursuant to CAFA, federal courts are now vested with original jurisdiction over class actions where the following conditions are met: (1) there is minimal diversity (one plaintiff's diversity from one defendant suffices); (2) the putative class contains at least 100 class members; and (3) the aggregate amount in controversy is at least $5,000,000, exclusive of interests and costs.  See 28 U.S.C. §§ 1332(d)(2)-(5).

There are, however, three exceptions to federal jurisdiction under CAFA -- the so-called "local controversy," "home state controversy," and "interests of justice" exceptions.

The "local controversy" exception provides that a district court must decline jurisdiction if: (1) more than two-thirds of the putative class members are citizens of the state in which the action was originally filed; (2) there is at least one defendant from whom "significant relief" is sought by the class members, whose alleged conduct forms a "significant basis" for the asserted claims, and who is a citizen of the state in which the action was originally filed; (3) the principal injuries suffered by the class were incurred in the state in which the action was originally filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years. § 1332(d)(4)(A).

Similarly, under the "home state controversy" exception, a district court must decline to exercise jurisdiction over a class action in which two-thirds or more of the putative class members, and the primary defendants, are citizens of the state in which the action is originally filed.  § 1332(d)(3).

Finally, a district court may, in the "interests of justice" and looking at the totality of the circumstances, decline to exercise jurisdiction in class actions in which more than one-third but less than two-thirds of the members of the putative class and the primary defendants are citizens of the

state in which the action was originally filed, based upon
consideration of the following factors:

> (A) whether the claims asserted involve
> matters of national or interstate interest;
> (B) whether the claims asserted will be
> governed by laws of the State in which the
> action was originally filed or by the laws of
> other States;
> (C) whether the class action has been pleaded
> in a manner that seeks to avoid Federal
> jurisdiction;
> (D) whether the action was brought in a forum
> with a distinct nexus with the class members,
> the alleged harm, or the defendants;
> (E) whether the number of citizens of the
> State in which the action was originally
> filed in all proposed plaintiff classes in
> the aggregate is substantially larger than
> the number of citizens from any other State,
> and the citizenship of the other members of
> the proposed class is dispersed among a
> substantial number of States; and
> (F) whether, during the 3-year period
> preceding the filing of that class action, 1
> or more other class actions asserting the
> same or similar claims on behalf of the same
> or other persons have been filed.

§ 1332(d)(3).

## 2.  **Analysis**

Mattera, as the party seeking to invoke the subject
matter jurisdiction of the Court, bears the burden of proving by
a preponderance of the evidence that it exists.  See Pilyavsky v.
United States Dep't of Justice, No. 05 Civ. 2920, 2006 WL 536635,
at *3 (S.D.N.Y. Mar. 6, 2006) (citing Makarova v. United States,
201 F.3d 110, 113 (2d Cir. 2000)).  The Court "'constru[es] all
ambiguities and draw[s] all inferences' in [Mattera's] favor."
See Pilyavsky, 2006 WL 536635, at *3 (quoting Aurecchione v.
Schoolman Transp. Svs. Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

- 18 -

I conclude that Mattera has met her burden of proving that jurisdiction exists pursuant to CAFA.  First, Mattera brings this suit "on her own behalf and on behalf of a class of persons under [Fed. R. Civ. P.] 23(a), (b)(2), and (b)(3)."  (Compl. ¶ 9).  Accordingly, this lawsuit meets CAFA's definition of "class action."  See 28 U.S.C. § 1332(d)(1)(B).  Second, there is minimal diversity, as Mattera is a New York citizen and neither CCC nor CCB is a New York citizen.  (See Compl. ¶¶ 4, 5).  Third, the requisite minimum number of putative class members exists here.  While the complaint does not precisely quantify the purported class, Mattera estimates that there are approximately 300 putative class members.  (Id. ¶ 11).  Finally, Mattera alleges that the amount in controversy exceeds $5,000,000, exclusive of interest and costs, which is the amount necessary for CAFA jurisdiction to attach.  (Id. ¶ 7).

The Court next considers whether any of the three exceptions to CAFA jurisdiction are applicable here.  Relying on the local controversy exception, Defendants contend that this case is excluded from CAFA jurisdiction.  They state, "there can be no doubt that this action is a 'truly local controversy' in that it involves a New York citizen representative Plaintiff and all New York citizen class members, who are litigating claims under a New York state statute, relating to their employment at New York radio stations, and alleged deductions from wages paid by a New York corporation (Capstar)."  (Def. Mot. 9).  Mattera's primary argument in response is that she seeks significant relief

from CCC, not Capstar, and that it is CCC whose conduct forms the
basis for her claims.  Citing the Senate Judiciary Committee
Report on CAFA, she explains that the local controversy exception
is a "narrow exception that was carefully drafted to ensure that
it does not become a jurisdictional loophole."  (Pl.'s Opp. 16
(quoting S. Rep. No. 109-14 at 39)).

          Before the Court may even address whether the local
controversy exception bars jurisdiction over this case, the Court
must determine, as an initial matter, which party bears the
burden of proof when an exception to CAFA jurisdiction is
implicated.  The statute is silent on where the burden of proof
lies, and no circuit or district court appears to have considered
this issue.

          There are, however, courts that have examined the issue
in deciding motions to remand in actions removed to federal court
on the basis of CAFA jurisdiction.  Under those circumstances,
the Fifth, Seventh, and Eleventh Courts, as well as district
courts in other circuits, have held that once the removing
defendant proves the requisite amount in controversy and the
existence of minimal diversity, the burden shifts to the
plaintiff seeking remand to prove that a CAFA exception should
apply.  See Frazier v. Pioneer Americas LLC, 455 F.3d 542, 546
(5th Cir. 2006); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d
675, 680 (7th Cir. 2006); Evans v. Walter Indus., Inc., 449 F.3d
1159, 1165 (11th Cir. 2006).  In contrast, at least two district
courts have held that it is the defendant who has the burden of

persuasion in showing that a removed class action falls within a
CAFA exception.  See Lao v. Wickes Furniture Co., Inc., No. 06
Civ. 448, 2006 WL 2879763, at *13 (C.D. Cal. Oct. 4, 2006)
("[T]he court finds, as a matter of statutory construction, the
burden of proving the elements outlined in [the local controversy
and home state exceptions] falls on the removing party"); Serrano
v. 180 Connect, Inc., No. 06 Civ. 1363, 2006 WL 2348888, at *1
(N.D. Cal. Aug. 11, 2006) (remanding case because defendants
failed to prove inapplicability of CAFA exceptions).

        The Court is not aware of, and the parties have not
pointed to, any decisions determining where the burden of proof
lies in cases originally filed in federal court where it is the
defendants who seek to avail themselves of a CAFA exception in
challenging federal jurisdiction, as is the case here.
Highlighting the Frazier and Evans decisions noted above, Mattera
contends that the burden of proving the applicability of a CAFA
exception should rest with Defendants.  Conversely, Defendants
argue that it is Mattera who must prove both that CAFA's basic
requirements are met here and that none of the statutory
exceptions apply.  They claim that to place the burden elsewhere
would be inconsistent with the general rule that the party
seeking to invoke federal jurisdiction has the burden of
establishing it.

        I disagree.  I am not convinced that a plaintiff who
files an action in federal court asserting CAFA jurisdiction must
not only make a prima facie showing of jurisdiction under the

- 21 -

statute, but should also negate the applicability of the statutory exceptions.  It seems contrary to CAFA's stated purpose of expanding federal court jurisdiction over class actions to allocate to the plaintiff the burden of proving that a CAFA exception does not apply, where the plaintiff, having demonstrated minimal diversity and the requisite class size and amount in controversy under CAFA, has already established a basis for federal jurisdiction.  Pointing to CAFA's legislative history, the Seventh Circuit reasoned that placing the burden of proving the applicability of a CAFA exception on the plaintiff seeking remand comported with the statute's "strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Hart, 457 F.3d at 681; see also Evans, 449 F. 3d at 1164 n.3 ("placing the burden of proof on the plaintiff . . . is [] consistent with the statutory design"); Frazier, 455 F.3d at 546 (finding clear congressional intent to place burden of proof on plaintiff); Eakins v. Pella Corp., No. 05 Civ. 224, 2006 WL 2930110, at *1 (E.D.N.C. Sept. 27, 2006) (same); Robinson v. Cheetah Transp., No. 06 Civ. 0005, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006) (same).

I see no reason why this rationale should not apply to the situation presented here.  Congress, through enactment of CAFA, sought to encourage federal jurisdiction over interstate class actions.  I conclude that placing the burden of establishing the applicability of a CAFA exception on the party challenging federal jurisdiction, rather than on the party

invoking federal jurisdiction at the outset, better protects against the risk of state courts adjudicating class actions with national ramifications.  This is precisely the harm that Congress sought to alleviate in enacting the statute.  Accordingly, the Court holds that the party seeking to avail itself of an exception to CAFA jurisdiction over a case originally filed in federal court bears the burden of proving the exception applies. Here, Defendants shoulder the burden.

        I am mindful, however, of the respective abilities of the parties to obtain information on membership of the proposed class -- an analysis that must be undertaken to assess whether any of the three CAFA exceptions is applicable -- and recognize that the party challenging federal jurisdiction may not be in the best position to gather that information.  The plaintiff, as the party who defines the class, is likely to have more access to information on the composition of the proposed class, and certainly, courts have an interest in placing a burden of proof on the party "most capable of bearing it."  See Evans, 449 F.3d at 1164 n.3 (finding that plaintiff's relative ease of access to information on class membership further supported allocating to plaintiff the burden of proving local controversy exception). Nevertheless, the Court concludes that CAFA's stated purpose of allowing federal courts to hear more interstate class actions is best furthered by placing the burden of proof on the party seeking to avail itself of a CAFA exception.  Furthermore, in many cases information relating to the membership of the putative

class is more readily available to the employer.  The Court
believes that this is the case here.

I next turn to the merits of Defendants' argument that
this case is a local controversy.  In support of their argument,
Defendants note the following facts.  Mattera purports to bring
this action on behalf of sales representatives employed at New
York radio stations under New York's Labor Law.  (Def. Mot. 9).
Capstar, a New York citizen, owns and operates all of the CCC-
affiliated radio stations in New York City, and employs and pays
the majority of sales representatives working for CCC-affiliated
radio stations in New York state.  (Id.; Lescano Aff.  ¶¶ 9,10;
Ruiz Aff. ¶ 3).

Defendants have carried their burden.  First, the Court
looks to whether Capstar is a "significant defendant," i.e.,
whether the second and third prongs of the local controversy
exception are satisfied in this case.  At issue here are the
charge backs made from the wages of sales representatives who
worked or are working for stations in New York.  Because Capstar
employs and pays most of the current sales representatives in New
York and, thus, makes and retains the charge backs to their
wages, Capstar's conduct "forms a significant basis" for
Mattera's claims.  A significant portion of the relief Mattera
seeks -- a return of wages unlawfully deducted -- must be
provided by Capstar.  Hence, it is clear that Capstar is a
"significant defendant" within the meaning of the local
controversy exception.  See Evans, 449 F.3d at 1166-69 (holding

that "significant defendant" is one who has significant role in conduct alleged in complaint relative to other defendants, and one against whom the relief sought is significant portion of relief sought by entire class) (citing <u>Robinson</u>, 2006 WL 468820, at *3; <u>Kearns v. Ford Motor Co.</u>, No. 05 Civ. 5644, 2005 WL 3967998, at **10-11 (C.D. Cal. Nov. 21, 2005)).

Second, the facts support Defendants' contention that the principal injuries here were incurred in New York. For the local controversy exception to apply, the principal injuries suffered by the class must be limited to a particular state; it does not apply to cases in which the defendants engaged in conduct that "could be alleged to have injured [persons] throughout the country or broadly throughout several states." <u>Kearns</u>, 2005 WL 3967998, at *12 (quoting S. Rep. No. 109-14 at 40-41). Here, the injurious conduct is the charge back policy, which Mattera claims is in violation of New York Labor Law and has harmed, and continues to harm, sales representatives for stations located in New York. Although Mattera claims that the charge back policy is implemented nationwide, Defendants have presented evidence that, in fact, it is at the discretion of each CCC-affiliated radio station whether to make charge backs. (<u>See</u> Beck Aff. ¶¶ 2, 3; O'Sullivan Aff. ¶¶ 3, 4). In any event, sales representatives residing and working in states other than New York would not have standing to raise wage claims under New York law. I find that the principal injuries suffered here are limited to New York and are therefore local in nature.

Third, neither Mattera nor Defendants have indicated that a class action asserting the same or similar factual allegations made here has been filed against Capstar or any of the Defendants within the last three years, nor is the Court aware of any such action.

Finally, to address the first prong of the local controversy exception, Defendants assert that "[m]ore than two-thirds, if not all, purported plaintiffs in this action are citizens of New York."  (Def. Mem. 9).  While Defendants have not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is reasonably likely that more than two-thirds of the putative class members of the proposed class -- all of whom work in New York -- are citizens of New York.

Even assuming that New York citizens do not comprise more than two-thirds of the putative class, the Court has discretion to decline jurisdiction over this case in the interests of justice.  See 28 U.S.C. § 1332(d)(3).  It is difficult to conceive how the citizenship requirement under this exception, that more than one-third but less than two-thirds of the putative class members be New York citizens, would not be met here, given that all of the putative class members work in New York.  Upon consideration of the totality of the circumstances and the factors delineated in § 1332(d)(3), I am persuaded that the exercise of CAFA jurisdiction over this case is inappropriate.  Mattera's claim is governed by New York law; she

purports to bring her claim on behalf of persons working in New York, challenging a charge back policy in effect in New York that is in contravention of New York law.

Accordingly, the Court concludes that it does not have jurisdiction over this matter, under CAFA or otherwise.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to join an indispensable party is granted. Because joinder of such party would destroy complete diversity, and because there is no basis for jurisdiction under the Class Action Fairness Act, the complaint is dismissed for lack of subject matter jurisdiction, without prejudice to Mattera's filing suit in New York state court.

SO ORDERED.

Dated:    New York, New York
          November 14, 2006

DENNY CHIN
United States District Judge

- 27 -